UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
EBONY MEDIA OPERATIONS, LLC;                           :
                                                       :
                    Plaintiff,                             :   Civil Action No. _____
                                                       :
     v.                                               :
                                                       :
                                                       :   **JURY TRIAL DEMANDED**
UNIVISION COMMUNICATIONS INC.,                         :
FUSION MEDIA GROUP, LLC, and                           :
GIZMODO MEDIA GROUP, LLC,                              :
                                                       :
                    Defendants.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## COMPLAINT

EBONY MEDIA OPERATIONS, LLC ("Ebony") for its Complaint against UNIVISION COMMUNICATIONS INC., FUSION MEDIA GROUP, LLC, and GIZMODO MEDIA GROUP, LLC (collectively, "Defendants"), alleges as follows:

## THE PARTIES

1.    Plaintiff Ebony is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 1700 Post Oak Boulevard Suite 600, Houston, Texas 77056.

2.    On information and belief, Defendant Univision Communications Inc. ("Univision") is a Delaware corporation with its principal place of business at 605 Third Avenue, New York, New York 10158.

3.    On information and belief, Defendant Fusion Media Group, LLC ("FMG") is a limited liability company with its principal place of business at 2 W. 17th Street, New York, New York 10011. On information and belief, Univision is the parent company of FMG.

4.     On information and belief, Defendant Gizmodo Media Group, LLC is a Delaware limited liability company with its principal place of business at 114 Fifth Avenue, New York, New York 10011. On information and belief, Gizmodo Media Group, LLC ("Gizmodo") is an online media and blog network operated by Univision in its FMG division. On information and belief, Defendants Univision, FMG, and Gizmodo operate a digital magazine brand and online platform called "The Root" (www.theroot.com).

## NATURE OF THE ACTION

5.     This action seeks damages and injunctive relief to redress Defendants' infringement of Plaintiff's trademarks by unauthorized use in commercial advertising or promotion of Plaintiff's trademarks in connection with the sale, offering for sale, distribution and advertising of competing goods and services.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over the claims and causes of action asserted in this complaint pursuant to 28 U.S.C. § 1331 (federal question), because this matter involves the infringement of trademarks registered on the Federal Register, pursuant to federal law (Lanham Act, 15 U.S.C. § 1051, *et seq*.). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.     This Court has personal jurisdiction over Defendants, because, upon information and belief, New York, New York is the location of Defendants' headquarters and principal place of business. Further, upon information and belief, Defendants have purposefully availed themselves of the opportunity to conduct commercial activities using Plaintiff's trademarks and trade names in this district and this Complaint arises out of those activities. Defendants have published the offending material on their subsidiary digital platform, The Root, which actively

displays, disseminates, and promotes the offending material and may be accessed online, including in this district.

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 and 1400(b). A substantial part of the events giving rise to the claims occurred, and continue to occur, in the Southern District of New York. Defendants are headquartered in the Southern District of New York. The damage to Plaintiff described herein has taken place in the Southern District of New York and elsewhere.

## THE TRADEMARKS IN SUIT

9. In 1945, to protect its valuable trademark rights in its EBONY mark, Plaintiff Ebony applied for and then obtained U.S. Trademark Registration No. 423,815 for the EBONY Word Mark in U.S. Class 38 with a first use date in interstate commerce at least as early as October 15, 1945 for: "PERIODICAL PUBLICATION" (the "EBONY Word Mark").

10. Plaintiff Ebony is the owner of the entire right, title, and interest in and to the EBONY Word Mark, a famous incontestable trademark used in conjunction with Plaintiff's monthly magazine, EBONY Magazine. Attached hereto as Exhibit A is a true and correct copy of U.S. Trademark Registration No. 423,815 from the U.S. Patent and Trademark Office.

11. To protect its valuable trademark rights in its logo, Plaintiff Ebony applied for and obtained U.S. Trademark Registration No. 3,180,225 for the EBONY Logo Mark in U.S. Class 16 with a first use date in interstate commerce at least as early as November 1945 for: "Printed publications, namely, magazines of general interest; books in the field of history, education,

photography, cooking, health and wellness, entertainment; children's books" (the "EBONY Logo Mark"). The EBONY Logo Mark is shown below:



12. Plaintiff Ebony is the owner of the entire right, title, and interest in and to the EBONY Logo Mark, a famous incontestable trademark used in conjunction with Plaintiff's monthly magazine, EBONY Magazine. Attached hereto as Exhibit B is a true and correct copy of U.S. Trademark Registration No. 3,180,225 from the U.S. Patent and Trademark Office. (Collectively, the EBONY Word Mark and the EBONY Logo Mark are the "EBONY Marks").

## COMMON FACTS

13. Since the mid-1940's, Plaintiff's magazine, EBONY Magazine, has provided cultural insights, news, and African-American perspectives for an African-American audience. EBONY Magazine now features fashion, entertainment, beauty and lifestyle topics without compromising its commitment to cover important issues like social justice and health and wellness.

14. Plaintiff and its brand has been publicly recognized and praised by consumers, public figures, and advertisers. Ebony is the No. 1 source for an authoritative perspective on the Black community. Now in its 74th year, the monthly magazine reaches nearly 11-million readers featuring the best thinkers, trendsetters, hottest celebrities and next-generation leaders. EBONY ignites conversation, promotes empowerment and celebrates aspiration. Available globally on print and digital newsstands, EBONY is the heart, the soul and the pulse of Black America.

15. Plaintiff's EBONY Marks are used in connection with its monthly magazine, a magazine having nearly 11 million readers. Accordingly, the EBONY Marks are distinctive and famous.

16. Defendants' digital magazine, The Root, is in direct competition with Plaintiff's media holdings, namely EBONY Magazine and EBONY.com.

17. The Root caters to the African-American community and publishes an annual list of the 100 most influential African-American leaders, similar to EBONY Magazine's annual Power 100 List.

18. Defendants have engaged in a systematic campaign of misinformation regarding Plaintiff and its agents since at least April 19, 2017.

19. Defendants were never authorized by Plaintiff to use the EBONY Marks.

20. Now, Defendants are using, without authorization, an exact duplicate of the EBONY Marks to tarnish Plaintiff's brand and divert consumers and advertisers to The Root.

21. On or about November 28, 2018, Defendants published an article on their digital magazine, The Root, written by Lawrence Ross and titled "Dear Ebony Magazine: FU, Pay Your Writers!" (the "Article"). Plaintiff was not contacted regarding any of the allegations in the Article, and as a result, the Article contained misrepresentations including but not limited to the following:

> (a) "You see, the simps that own Ebony today, Willard Jackson and Michael Gibson, ain't responsible for all that black goodness. Nope, they're responsible for not paying black writers thousands of dollars for work already provided. I won't go into it here, because The Root's Michael Harriot and

Monique Judge did a fantastic job explaining the situation here and here, but only after many protests, and a lawsuit, have they made partial payments."

(b) The Article reports that Mari Copeny, the winner of the 2018 Ebony People's Choice Award, was not invited to Ebony's Power 100 Gala. Although the recipient of the People's Choice Award is not on the Power 100 List and typically does not attend the Gala, Plaintiff later invited Copeny to attend. Information regarding the invitation was not added to the updated version of the Article.

(c) The Article misrepresents the purpose of Ebony's Power 100 Gala and accuses Plaintiff of "spending the thousands owed to black writers" on an expensive venue and expensive meals. However, the Article fails to report that the proceeds of the event are donated to the Sickle Cell Disease Association and that event sponsors provide a significant amount of support for the event.

22. The Article features an image of an EBONY Magazine cover (the "Image") containing 1) the identifiable likeness of Plaintiff's co-founders Michael Gibson and Willard Jackson, 2) false and misleading "headlines," 3) the famous EBONY Word Mark, and 4) the famous EBONY Logo Mark. Attached hereto as Exhibit C is a true and correct copy of the Image.

23. The Image contains headlines reading "Special Deadbeat Edition: #EbonyStillOwes"; "Cheat your black writers by not paying? Ebony owners Michael Gibson & Willard Jackson show us how!"; "Ebony 100 Gala: Let Them Eat Cake! 101 Ways Ebony Doesn't Pay Writers… But Holds Gala Banquet w/ Chris Tucker"; "New Ebony Owners: Michael Gibson and Willard Jackson The Slow Play Kings of Black Biz"; and "December 2018:

Thousands in Back Pay." The Article goes on to suggest that readers share the Image on Facebook, Instagram, and Twitter along with the hashtags #EbonyPower100 #EbonyGala #EbonyChallenge @EbonyMag #EbonyStillOwes.

24. The Article then advocates for readers to pressure Plaintiff's sponsors by posting the Image to Twitter along with the following message: "[D]o you know that @EbonyMag owes thousands to writers while you sponsor their #EbonyPowerGala? Your #Ebony Challenge is to stand with the writers." The Article reaffirms the recommendation to include hashtags referring to EBONY Magazine and Plaintiff's gala when contacting Plaintiff's sponsors through Twitter.

25. In response to the Article and the Image, Plaintiff issued two cease and desist letters to Defendants, one on November 28, 2018 and the other on November 29, 2018. In these letters, Plaintiff informed Defendants of the misrepresentations and inaccuracies littering the Article and demanded immediate take down of the infringing and disparaging content. Defendants failed to comply with Plaintiff's demand.

26. On November 29, 2018, Defendants updated the Article to acknowledge that Plaintiff was in fact current on their payments in the class action settlement entered into in February 2018. However, the Article failed to correct its misrepresentation that any such payments were "court-ordered." The February 2018 class action settlement resolved a legacy dispute between Plaintiff and freelance writers, photographers, videographers and other content contributors. The settlement agreement was freely entered into by Plaintiff and not "court-ordered" as the Article repeatedly states.

27. Defendants compete directly with Plaintiff in the promotion, sale, and distribution of substantially similar goods and services.

28. On information and belief, Defendants' false advertising and use of Plaintiff's EBONY Marks has caused Plaintiff to lose ad sales and revenue by deceiving customers and advertisers into visiting Defendants' online media platforms instead of Plaintiff's online media platforms.

29. On information and belief, Defendants' false advertising and use of Plaintiff's trademarks has caused Plaintiff to lose sales and revenue by deceiving customers into using Defendants' products instead of Plaintiff's products.

30. On information and belief, Defendants' false advertising and use of Plaintiff's trademarks has benefited Defendants, increasing Defendants' sales and revenue and attracting customers to Defendants' products instead of Plaintiff's products.

## COUNT I
## TRADEMARK INFRINGEMENT, LANHAM ACT
## 15 U.S.C. §§ 1114 AND 1117

31. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

32. Plaintiff owns the right, title and interest in federally registered trademarks, including the EBONY Marks.

33. Defendants have used Plaintiff's trademarks in the Image and has encouraged others to disseminate the Image.

34. The use of Plaintiff's trademarks by Defendants diverts Plaintiff's readers and advertisers away from Plaintiff and instead to Defendants.

35. The marks used by Defendants are identical to the marks owned by Plaintiff.

36. Plaintiff and Defendants both sell related goods, namely periodical publications and related online magazine content.

37. Plaintiff has never consented to the use of its marks by Defendants, and has made no affiliation with, or sponsorship of, Defendants' products.

38. As a direct and proximate result of Defendants' trademark infringement, Plaintiff has been damaged within the meaning of 15 U.S.C. §§ 1114, *et seq*.

39. Defendants' unlawful use of Plaintiff's trademarks has damaged and/or will damage Plaintiff's relationships with customers, and/or is likely to confuse potential customers and potential customers.

40. Defendants had, at all times, the ability to control the infringement and those directly responsible for the infringement, and financially benefited from the infringement.

41. Plaintiff is also entitled to statutory damages pursuant to 15 U.S.C. § 1117.

42. Plaintiff is further entitled to disgorgement of Defendants' profits from their willful acts and unjust enrichment.

43. Defendants willfully, intentionally, maliciously, deliberately and in bad faith infringed Plaintiff's trademarks.

44. This case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

45. Plaintiff's remedies at law are not adequate to compensate for injuries inflicted by Defendants; accordingly, Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief.

## COUNT II
## UNFAIR COMPETITION AND FALSE ADVERTISING, LANHAM ACT
## 15 U.S.C. §§ 1117 AND 1125(a)

46. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

47. Defendants have made numerous false statements about Plaintiff's commercial activities.

48. Defendants have used the EBONY Marks in commercial advertising or promotion, and in so doing has made false and misleading representations about the nature of Plaintiff's commercial activities.

49. Defendants have used the identical EBONY Marks in the promotion and sale in interstate commerce of highly similar goods and services to those sold by Plaintiff.

50. On the basis of the foregoing paragraphs, Defendants have, in connection with Plaintiff's goods and services, used a false or misleading description of fact, or a false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics and/or qualities of Plaintiff's goods, services, and commercial activities.

51. Defendants' statements have actually deceived or have the tendency to deceive a substantial segment of its audience.

52. Defendants' deception is material and is likely to influence the purchasing decisions of consumers of EBONY magazine and EBONY.com content, as well as current and potential advertisers on these platforms.

53. Defendants' false and misleading statements and representations were made in interstate commerce.

54. Defendants' unauthorized use of Plaintiff's EBONY Marks has created a likelihood of confusion, mistake, or is likely to deceive consumers about the nature, characteristics, or qualities of Plaintiff's commercial activities, and constitutes knowing, willful and blatant infringement of Plaintiff's EBONY Marks.

55. Defendants' use of the identical EBONY Marks erodes the demand for Plaintiff's goods and the value of its business.

56. Further, by reason of such wrongful false designations and descriptions by Defendants, Plaintiff was, is, and will be in the future, deprived of, among others, the profits and benefits of business relationships, agreements, and transactions with various existing clients and/or prospective clients and customers, in violation of 15 U.S.C. § 1125(a).

57. By reason of Defendants' false statements, Plaintiff has been and/or is likely to be injured as a result of these false statements, by direct diversion of sales from its products to that of Defendants and/or by a lessening of goodwill associated with Plaintiff's products.

58. Defendants' improper activities, as described above, have been willful and deliberate, thereby making this an exceptional case under the Lanham Act.

59. As a direct and proximate result of Defendants' wrongful acts, Defendants have wrongfully obtained profits and benefits at the expense of Plaintiff. Plaintiff is entitled to compensatory damages and to disgorgement of Defendants' profits, in an amount to be determined at trial, along with other just damages to be determined at trial.

60. Upon information and belief, Defendants will continue their violations of the Lanham Act unless such acts are restrained and preliminarily and/or permanently enjoined by this Court. Should Defendants be permitted to continue their false and/or misleading

descriptions and misrepresentations of fact and false advertising, Plaintiff will suffer irreparable injury for which it has no adequate remedy at law.

61. Defendants willfully, intentionally, maliciously, deliberately and in bad faith infringed Plaintiff's trademarks, thus this case qualifies for enhanced damages and attorneys' fees pursuant to 15 U.S.C. § 1117.

## COUNT III
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

62. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

63. Prior to engaging in the aforementioned conduct, Defendants were fully aware that Plaintiff had business relationships with third parties that were very likely to result in economically-advantageous relationships between Plaintiff and third parties.

64. Defendants knew, or reasonably should have known, that their statements about Plaintiff were false and misleading.

65. Defendants engaged in the conduct alleged above with the intent to interfere with and/or destroy the economically-advantageous relationship between Plaintiff and third parties, and to make those relationships less financially lucrative for Plaintiff.

66. As a proximate result of the conduct of Defendants as alleged herein, Plaintiff has been damaged in an amount to be determined at trial.

67. The conduct of Defendants as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Plaintiff of profits or otherwise causing injury, and was despicable conduct that subjected Plaintiff to cruel and unjust hardship in conscious disregard of its rights, and was performed with oppression or malice so as to justify an award of exemplary or punitive damages against Defendants in an amount to be determined at trial.

## COUNT IV
## TRADEMARK DILUTION, LANHAM ACT
## 15 U.S.C. §§ 1117 AND 1125(c)

68. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

69. This claim is for trademark dilution pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c), as amended.

70. Defendants have engaged in the acts alleged above, including *inter alia*, falsely disparaging the EBONY Marks to tarnish Plaintiff's brand and divert consumers and advertisers to The Root.

71. Plaintiff's marks are distinctive and famous within the meaning of 15 U.S.C. § 1125(c) and were distinctive and famous prior to the date of Defendants' unauthorized adoption and use of the EBONY Marks.

72. Defendants' conduct, as described above, is diluting and is likely to dilute Plaintiff's famous marks by harming the reputation of the EBONY Marks.

73. Defendants' conduct, as described above, is diluting and is likely to dilute Defendants' famous marks by impairing the distinctiveness of the EBONY Marks.

74. As a direct and proximate result of Defendants' actions, Plaintiff has been damaged within the meaning of 15 U.S.C. § 1125(c).

75. By reason of such wrongful acts, Plaintiff is and was, and will be in the future, deprived of, among others, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationship. Defendants have wrongfully obtained profit and benefits instead of Plaintiff. To the extent available, Plaintiff is entitled to compensatory damages and disgorgement of Defendants' said profits, in an amount to be proven at trial.

76. Defendants' acts described above have caused injury and damages to Plaintiff, and have caused irreparable injury to Plaintiff's goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiff has no adequate remedy at law.

## COUNT V
## UNFAIR AND DECEPTIVE BUSINESS PRACTICES
## N.Y. GEN. BUS. L. § 349

77. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

78. On the basis of the foregoing, Defendants have engaged and is engaged in consumer-oriented conduct that is deceptive or misleading in a material way, constituting unfair and deceptive business practices in violation of Section 349 of the N.Y. General Business Law.

79. Defendants' false, misleading and deceptive statements and representations of fact were and are directed to consumers.

80. Defendants' false, misleading and deceptive statements of fact are likely to mislead a reasonable consumer acting reasonably under the circumstances.

81. Defendants' false, misleading and deceptive statements of fact have resulted or are likely to result in consumer injury or harm to the public interest.

82. As a result of Defendants' unfair and deceptive business practices, Plaintiff has suffered and will continue to suffer substantial injury, including irreparable injury and damages, including but not limited to loss of sales and profits to Plaintiff that Plaintiff would have made but for the false and deceptive advertising by Defendants, unless Defendants are preliminarily and/or permanently enjoined by this Court.

## COUNT VI
## UNFAIR COMPETITION

83. Plaintiff repeats and realleges the foregoing paragraphs as if set forth herein.

84. Defendants misappropriated Plaintiff's commercial advantage by using Plaintiff's trademarks and trade names to promote, market, or sell products and services in direct competition with Plaintiff.

85. In misusing Plaintiff's trademarks and trade names, Defendants acted knowingly, wantonly, in bad faith and with intentional disregard for the rights of Plaintiff.

86. The foregoing acts of Defendants were done without justification and for the wrongful purpose of injuring Plaintiff and its competitive position while unfairly benefiting Defendants.

87. Defendants's unlawful competition has caused and will cause loss, injury and damage to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

a. The entry of Judgment in favor of Plaintiff, and against Defendants on all claims;

b. A preliminary and permanent injunction against Defendants enjoining them from engaging in trademark infringement, unfair competition, and deceptive business practices as set forth in this complaint;

c. A preliminary and permanent injunction against Defendants enjoining them from making false and disparaging statements about Plaintiff and its agents;

d. A preliminary and permanent injunction against Defendants enjoining them from making any further representations regarding Plaintiff's contractual relationships with Plaintiff's customers and from continuing to publish the false and misleading

       statements it has already published in any of their online or print platforms;

e. An order requiring Defendants to publish a retraction of the Article and the Image and any other false and misleading statements about Plaintiff on any of Defendants' online or print platforms where such content has appeared;

f. An order requiring Defendants not to update or refresh the Article and the Image and any other false and misleading statements about Plaintiff on any of Defendants' online or print platforms where such content has appeared;

g. Compensatory damages in an amount to be determined at trial and that is otherwise incalculable at this time, but is not less than $750,000.00;

h. Restitution of Defendants' unjust enrichment and profits as allowed by law;

i. Treble damages for willful infringement;

j. An award of damages sustained by Plaintiff pursuant to 15 U.S.C. § 1117(a)(2), N.Y. Gen. Bus. L. §§ 349 and 350, and as otherwise permitted by law;

k. An accounting and award of profits derived by Defendants from their unlawful conduct pursuant to 15 U.S.C. § 1117(a)(1), and as otherwise permitted by law;

l. Exemplary and punitive damages in an amount to be determined at trial and sufficient to punish and deter Defendants' defamatory conduct, interference with contractual relations and prospective economic advantage, and unfair trade practices;

m. An award of Plaintiff's costs of suit, including reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117(a)(3), and as otherwise permitted by law;

n. An award of prejudgment and post-judgment interest; and

o. An award to Plaintiff of any other relief, in law and in equity, to which the Court finds Plaintiff justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury of all issues triable as of right by a jury in this action.

Dated: December 7, 2018

Respectfully submitted,

/s/ Kevin N. Ainsworth
Kevin N. Ainsworth
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, NY 10017
Tel: (212) 935-3000
Fax: (212) 983-3115
Email: kainsworth@mintz.com

Randy K. Jones (*Pro Hac Vice application forthcoming*)
Andrew D. Skale (*Pro Hac Vice application forthcoming*)
MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, California 92130
Tel: 858-314-1500
Fax: 858-314-1501
Email: rkjones@mintz.com;
adskale@mintz.com

*Attorneys for Plaintiff*
*EBONY MEDIA OPERATIONS, LLC*

82947419v.5