UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

EBONY MEDIA OPERATIONS, LLC,                 :
                                             :
                              Plaintiff,     :        No. 1:18-cv-11434 (AKH)
                                             :
         -v-                                 :
                                             :
                                             :
UNIVISION COMMUNICATIONS, INC.,              :
FUSION MEDIA GROUP, LLC, and                 :
GIZMODO MEDIA GROUP, LLC                     :
                                             :
                                             :
                              Defendants.    :

------------------------------------------------------------x

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS
PURSUANT TO RULE 12(B)(6) AND THE TEXAS CITIZENS PARTICIPATION ACT**</u>

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

ALLEGATIONS OF THE COMPLAINT.......................................................................... 3

ARGUMENT ...................................................................................................................... 6

I.   THE COURT SHOULD DISMISS PLAINTIFF'S FEDERAL LAW CLAIMS
     UNDER RULE 12(B)(6) FOR FAILURE TO STATE A PLAUSIBLE
     CLAIM FOR RELIEF ............................................................................................. 6

     A.   Plaintiff Has Not Stated a Plausible Claim for Trademark Infringement................... 6

          1.   The Parody Cover creates no likelihood of confusion........................................ 7

          2.   The public interest in furthering Defendants' free expression would
               outweigh any risk of confusion, even if such a risk existed .............................. 10

     B.   Plaintiff Has Not Stated a Plausible Claim for False Advertising ............................. 12

     C.   Plaintiff Has Not Stated a Plausible Claim for Dilution ............................................. 14

II.  THE COURT SHOULD DISMISS PLAINTIFF'S STATE LAW CLAIMS
     UNDER THE TEXAS ANTI-SLAAP STATUTE, OR, IN THE
     ALTERNATIVE, RULE 12(B)(6) ......................................................................... 14

     A.   Texas Law Governs Plaintiff's Claims for Tortious Interference and
          Unfair Competition and Application of the TCPA ...................................................... 15

          1.   There is an actual conflict between Texas and New York law......................... 15

          2.   Texas has the greatest interest in Plaintiff's common law claims and
               the application of its anti-SLAPP law................................................................. 17

     B.   The Court Should Dismiss Plaintiff's State Law Claims
          Pursuant to the TCPA ................................................................................................. 21

          1.   Plaintiff's claims are based on, relate to, and are in response to
               Defendants' exercise of their right of free speech ............................................ 21

i

2.    Plaintiff cannot establish a prima facie case of tortious interference
or unfair competition...........................................................................................22

C.    The Court Also May Dismiss Plaintiff's State Law Claims
Under Rule 12(b)(6)..........................................................................................25

CONCLUSION.............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1800 GET THIN, LLC v. Hiltzik,*
    No. 11-CV-0505 (ODW), 2011 WL 3206486 (C.D. Cal. July 25, 2011) ................................. 9

*Adelson v. Harris,*
    774 F.3d 803 (2d Cir. 2014) ........................................................................................... 15

*Armoloy Corp. v. Indus. Hard Chromium Co.,*
    No. 02-CV-50071, 2002 WL 1284286 (N.D. Ill. June 5, 2002) ............................................ 19

*AroChem Int'l, Inc. v. Buirkle,*
    968 F.2d 266 (2d Cir. 1992) ........................................................................................... 17

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................................ 6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ........................................................................................................ 6

*Berlin v. E.C. Publications, Inc.,*
    329 F.2d 541 (2d Cir. 1964) ........................................................................................... 10

*Big Vision Private Ltd. v. E.I. DuPont De Nemours & Co.,*
    1 F. Supp. 3d 224 (S.D.N.Y. 2014) ................................................................................. 16

*Boule v. Hutton,*
    328 F.3d 84 (2d Cir. 2003) ............................................................................................. 24

*Brady v. Klentzman,*
    515 S.W.3d 878 (Tex. 2017) ........................................................................................... 22

*C=Holdings B.V. v. Asiarim Corp.,*
    992 F. Supp. 2d 223 (S.D.N.Y. 2013) ............................................................................. 25

*Camp v. Patterson,*
    No. 03-16-00733-CV, 2017 WL 3378904 (Tex. Ct. App. Aug. 3, 2017) ............................. 23

*Campo v. 1st Nationwide Bank,*
    857 F. Supp. 264 (E.D.N.Y. 1994) ................................................................................. 16

iii

*Carvel Corp. v. Noonan*,
   3 N.Y.3d 182 (2004) ...................................................................................... 16

*Charles Atlas, Ltd. v. DC Comics, Inc.*,
   112 F. Supp. 2d 330 (S.D.N.Y. 2000) ........................................................... 11

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*,
   886 F.2d 490 (2d Cir. 1989) ........................................................... 6, 8, 10, 11

*Coinmach Corp. v. Aspenwood Apartment Corp.*,
   417 S.W.3d 909 (Tex. 2013) ..................................................................... 16, 23

*Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*,
   No. 07-CV-0997, 2009 WL 838549 (S.D. Ind. Mar. 26, 2009) ...................... 19

*Discover Grp., Inc. v. Lexmark Int'l, Inc.*,
   333 F. Supp. 2d 78 (E.D.N.Y. 2004) .............................................................. 18

*Enterprise Rent-A-Car Company v. U-Haul Intern., Inc.*,
   327 F. Supp. 2d 1032 (E.D. Mo. 2004) .......................................................... 19

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ....................................................................... 12

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
   314 F.3d 48 (2d Cir. 2002) ............................................................................. 12

*Fin. One Pub. Co. v. Lehman Bros. Special Fin.*,
   414 F.3d 325 (2d Cir. 2005) ........................................................................... 15

*Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Group, Inc.*,
   808 F. Supp. 1112 (S.D.N.Y. 1992) ............................................................... 10

*Global Network Communications, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ............................................................................. 4

*Gray v. Busch Entm't Corp.*,
   886 F.2d 14 (2d Cir. 1989) ............................................................................. 18

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
   No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) .................. 23

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183 (1980) ..................................................................................... 16

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*,
 277 F. Supp. 2d 269 (S.D.N.Y. 2003) ................................................................. 24

*Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*,
 241 F. Supp. 2d 246 (S.D.N.Y. 2002) ................................................................. 18

*Hoffman v. Capital Cities/ABC, Inc.*,
 255 F.3d 1180 (9th Cir. 2001) ............................................................................ 12

*Hormel Foods Corp. v. Jim Henson Prods., Inc.*,
 73 F.3d 497 (2d Cir. 1996) ................................................................................... 8

*Hustler Magazine, Inc. v. Falwell*,
 485 U.S. 46 (1988) .............................................................................................. 10

*In re Allstate Ins. Co.*,
 81 N.Y.2d 219 (1993) .......................................................................................... 15

*In re Lipsky*,
 460 S.W.3d 579 (Tex. 2015) ................................................................... 20, 21, 22

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*,
 823 F.3d 153 (2d Cir. 2016) .................................................................................. 7

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
 58 F.3d 27 (2d Cir. 1995) .................................................................................... 16

*Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing & Heating Co.*,
 695 S.W.2d 75 (Tex. Ct. App. 1985) ................................................................... 17

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
 313 U.S. 487 (1941) ............................................................................................ 15

*Krock v. Lipsay*,
 97 F.3d 640 (2d Cir. 1996) .................................................................................. 17

*Liberty Synergistics Inc. v. Microflo Ltd.*,
 718 F.3d 138 (2d Cir. 2013) ................................................................................ 15

*Lombard v. Booz-Allen & Hamilton, Inc.*,
 280 F.3d 209 (2d Cir. 2002) ................................................................................ 25

*Lombardo v. Dr. Seuss Enterprises, L.P.*,
 279 F. Supp. 3d 497 (S.D.N.Y. 2017) ................................................................... 9

*Manigault v. ABC Inc.*,
  No. 17-CV-7375 (KNF), 2018 WL 5818101 (S.D.N.Y. Oct. 10, 2018) ................................ 12

*N. Atl. Instruments, Inc. v. Haber*,
  188 F.3d 38 (2d Cir. 1999) ........................................................................................... 15

*N.Y. Pub. Interest Research Group, Inc. v. Ins. Info. Inst.*,
  554 N.Y.S.2d 590 (N.Y. App. Div. 1st Dep't 1990) ............................................................ 25

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) .................................................................................................... 12

*Nabisco, Inc. v. Warner-Lambert Co.*,
  220 F.3d 43 (2d Cir. 2000) ............................................................................................ 8

*Nat'l Basketball Ass'n v. Motorola, Inc.*,
  105 F.3d 841 (2d Cir. 1997) ........................................................................................ 12

*National Distillers Prods. Co. v. Refreshment Brands, Inc.*,
  198 F. Supp. 2d 474 (S.D.N.Y. 2002) ........................................................................... 24

*New Kids on the Block v. News Am. Publ'g, Inc.*,
  971 F.2d 302 (9th Cir. 1992) ................................................................................... 9, 11

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
  85 N.Y.2d 20 (1995) ................................................................................................... 25

*Out of Box Promotions, LLC v. Koschitzki*,
  55 A.D.3d 575 (N.Y. App. Div. 2d Dep't 2008) .............................................................. 16

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ..................................................................................... 19

*Patmont Motor Werks, Inc. v. Gateway Marine, Inc.*,
  No. C 96-2703 (THE), 1997 WL 811770 (N.D. Cal. Dec. 18, 1997) ...................................... 9

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
  413 U.S. 376 (1973) .................................................................................................... 12

*Polaroid Corp. v. Polarad Electronics Corp.*,
  287 F.2d 492 (2d Cir. 1961) .......................................................................................... 7

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ................................................................................... 8, 11

*Rothman v. Gregor,*
    220 F.3d 81 (2d Cir. 2000) ........................................................................................ 4

*Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.,*
    672 F.2d 1095 (2d Cir. 1982) .................................................................................. 18

*Savin Corp. v. Savin Group,*
    391 F.3d 439 (2d Cir. 2004) ...................................................................................... 6

*Schultz v. Boy Scouts of Am., Inc.,*
    65 N.Y.2d 189 (1985) ........................................................................................ 15, 17

*Snyder v. Phelps,*
    562 U.S. 443 (2011) ................................................................................................ 22

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,*
    374 F.3d 158 (2d Cir. 2004) .................................................................................... 25

*Taylor Made Golf CO., Inc. v. MJT Consulting Grp., LLC.,*
    265 F. Supp. 2d 732 (N.D. Tex. 2003) .................................................................... 17

*Taylor Pub. Co. v. Jostens,*
    216 F.3d 465 (5th Cir. 2000) ............................................................................ 18, 24

*Tobinick v. Novella,*
    108 F. Supp. 3d 1299 (S.D. Fla. 2015) .................................................................... 19

*Torah Soft Ltd. v. Drosnin,*
    224 F. Supp. 2d 704 (S.D.N.Y. 2002) .................................................................... 18

*Trustforte Corp. v. Eisen,*
    10 Misc. 3d 1064(A), 814 N.Y.S.2d 565 (N.Y. Sup. Ct. 2005) .............................. 18

*Tu Nguyen v. Duy Tu Hoang,*
    318 F. Supp. 3d 983 (S.D. Tex. 2018) .................................................................... 22

*Twelve Inches Around Corp. v. Cisco Sys., Inc.,*
    No. 08-CV-6896 (WHP), 2009 WL 928077 (S.D.N.Y. Mar. 12, 2009) ................. 25

*Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,*
    220 F. Supp. 2d 289 (S.D.N.Y. 2002) .................................................................... 25

*UAW Local 1981 Nat'l Writers Union v. Ebony Media Operations, LLC,*
    No. 2017-L-008951 (Cook Cty Ct. Sept. 5, 2017) .................................................... 4

*Underwriters, Inc. v. Lichtenegge*r,
   913 F.3d 884 (9th Cir. 2019) ................................................................ 8

*Wal-Mart Stores, Inc. v. Sturges*,
   52 S.W.3d 711 (Tex. 2001)................................................................ 16

*Yankee Pub. Inc. v. News Am. Pub. Inc.*,
   809 F. Supp. 267 (S.D.N.Y. 1992) ........................................ 9, 10, 11, 12

**Statutes/Rules**

15 U.S.C. § 1125................................................................ 7, 15, 18

Fed. R. Civ. P. 12(b)(6).................................................................... 1, 2

N.Y. Civ. R. § 70-a ........................................................................ 22

N.Y. Civ. R. § 76-a ........................................................................ 22

N.Y. General Business Law § 349................................................ 6, 33

Tex. Civ. Prac. & Rem. Code § 27.001 ............................ 1, 22, 29, 30

Tex. Civ. Prac. & Rem. Code § 27.002 ...................................... 26

Tex. Civ. Prac. & Rem. Code § 27.005 ...................................... 28

Tex. Civ. Prac. & Rem. Code § 27.009 ...................................... 27

Tex. Civ. Prac. & Rem. Code § 27.011 ...................................... 27

***Other Sources***

House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973,
   82nd Leg., R.S. (2011)................................................................ 27

4 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.)     8

Restatement of Conflict of Laws § 377 ........................................ 23

Defendants respectfully submit this Memorandum of Law in support of their Motions to Dismiss the Complaint of Ebony Media Operations, LLC ("Plaintiff" or "Ebony") pursuant to Federal Rule of Civil Procedure 12(b)(6) and the Texas Citizens Against Participation Act, Tex. Civ. Prac. & Rem. Code § 27.001 *et seq*. (the "Texas anti-SLAPP statute" or "TCPA").

## PRELIMINARY STATEMENT

Plaintiff Ebony Media Operations, LLC is the owner of *Ebony* magazine.  Plaintiff has filed this unjustifiable suit alleging trademark and other violations in a transparent attempt to silence criticism over the historically black-owned magazine's failure to pay its black writers.

This action concerns an article titled "Dear Ebony Magazine: FU, Pay Your Writers!" (the "Article") published by the digital news website *The Root*, owned by Defendants.[1]  Like *Ebony* magazine, *The Root* features black news, opinions, politics, and culture, and one of *The Root's* black writers authored the piece.  The Article, which is harshly critical of Plaintiff for failing to pay its own black writers, chastises Plaintiff for spending money to promote its brand while letting its writers languish and implores Plaintiff to "respect [its] black writers" and to "pay the writers, today."  The Article includes a mock *Ebony* cover (the "Parody Cover") that skewers the company through mock headlines labeling the company a "deadbeat" and a "cheat." Not surprisingly, the Article and the Parody Cover use Plaintiff's trademark name and logo to identify the company and *Ebony* magazine, and to mimic *Ebony*'s cover.

Angered over *The Root's* coverage, but apparently understanding that it had no basis on which to silence Defendants' free speech, Plaintiff has filed this pretextual action, claiming that Defendants' use of Plaintiff's marks in the Article and/or Parody Cover constitutes trademark

---

[1] Named Defendant Gizmodo Media Group, LLC alone owns and publishes *The Root*. Nevertheless, for purposes of this motion to dismiss, Defendants accept as true Plaintiff's (erroneous) allegations that all Defendants published the Article and Parody Cover.

infringement, false advertising, and dilution under federal law and, hence, tortious interference and unfair competition under state common and/or statutory law.

The Court should dismiss Plaintiff's federal claims under Rule 12(b)(6) because Plaintiff cannot plausibly allege that Defendants' use of Plaintiff's *Ebony* marks (1) is likely to cause consumer confusion as to the origin, source, or sponsorship of those works—the lynchpin of any trademark infringement claim; (2) constitutes false advertising; or (3) dilutes Plaintiff's marks.

Plaintiff cannot plausibly allege the requisite confusion in support of its infringement claim because the Parody Cover is obviously critical of Plaintiff, and its mock headlines (*e.g.*, "Special Deadbeat Edition: #EbonyStillOwes"; "Cheat your black writers by not paying? Ebony owners Michael Gibson & Willard Jackson show us how!") make it impossible for anyone to believe that Plaintiff originated, sponsored, or endorsed the work.  In any event, the First Amendment bars Plaintiff's infringement claim because the public interest in furthering Defendants' expressive activities far outweighs any risk of confusion that Plaintiff disingenuously contends the Parody Cover could cause.

Plaintiff cannot plausibly allege false advertising because the Article and Parody Cover are neither commercial advertisements nor false or misleading; they are expressive works that are harshly, and accurately, critical of Plaintiff.

Plaintiff cannot plausibly allege dilution because, as expressive works, the Article and Parody Cover are not actionable under the express terms of the federal dilution statute.

The Court also should dismiss all of Plaintiff's redundant state law claims under Texas's anti-SLAPP statute or, in the alternative, Rule 12(b)(6) for the following reasons:

*First*, the Court should apply the Texas anti-SLAPP statute to all of Plaintiff's state law claims because there are actual conflicts between New York and Texas regarding these laws, and

Texas has the most significant interest in having its laws applied.  Among other things, Plaintiff is a Texas-based company and Texas has the greatest interest both in promoting free speech concerning the citizens of its State and in curtailing abusive filings by those citizens that threaten this free speech.

*Second*, the Court should dismiss all of Plaintiff's state law claims under the Texas anti-SLAPP statute because the claims are in retaliation for Defendants' exercise of their right of free speech—here, to report and comment upon Plaintiff's failure to pay its black writers, including through the time-honored, artistic device of parody.  Further, Plaintiff cannot establish by clear and specific evidence a prima facie case for each essential element of its claims, most notably because the Article and/or Parody Cover are not independently unlawful.

Finally, as an alternative to dismissal under the Texas anti-SLAPP statute, the Court also may dismiss with prejudice Plaintiff's state law claims under Rule 12(b)(6) for failure to plausibly allege viable claims for relief.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff is a Texas-based publisher of *Ebony* magazine.  Compl. ¶¶ 1, 13.  Plaintiff's *Ebony* magazine provides "cultural insights, news and African-American perspectives for an African-American audience," including on issues of "social justice."  *Id.* ¶ 13.  Plaintiff is the owner of two federally-registered marks for *Ebon*y, one for the *Ebony* name and the other for the *Ebony* logo.  *Id.* ¶¶ 10–12.  Defendants are New York-based entities that publish a digital magazine, *The Root*, which also "caters to the African-American community."  *Id.* ¶¶ 2–4, 17.

*The Root* published the Article titled "Dear Ebony Magazine: FU, Pay Your Writers!"  *Id.* ¶ 21; *see* Declaration of Cynthia S. Arato ("Arato Decl."), Ex. A (the Article as published on November 28, 2018) (hereinafter "Article").

3

The Article is harshly critical of Ebony for failing to pay thousands of dollars to its black writers. *See generally* Article at 1–4. The Article explains that (1) black writers filed a lawsuit against Ebony over its failure to pay them; (2) Ebony failed to pay those writers even after the lawsuit was settled with Ebony's promise to pay; and (3) Ebony owed unpaid wages to other writers who were not part of the lawsuit. *Id.* at 2; *see also* Arato Decl., Ex. B (Complaint, *UAW Local 1981 Nat'l Writers Union v. Ebony Media Operations, LLC*, No. 2017-L-008951 (Cook Cty Ct. Sept. 5, 2017) (the "Lawsuit")).[2] The Article criticizes Ebony for its failure to pay black writers while purporting to champion and support the African-American community, and for spending money on a lavish annual gala while its writers languished. Compl. ¶ 21; Article at 2.

The author of the Article begins by stating "I write things for money." Article at 1. He explains that he is an African American who has been writing professionally for over twenty years, which is how he manages to "scratch out a living." *Id.* He expresses his anger and dismay that "black writers are literally *dying* before getting paid," while Ebony is spending "the thousands owed to black writers on rubber chicken" dinners. *Id.* at 2 (emphasis in original). He pays tribute to the many black writers who've been advocating for payment and explains that he is joining the protest. *Id.* at 2–3. And he implores Ebony to do "the right thing" and "[p]ay the writers. *Id.* at 2–3.

The Article is accompanied by the Parody Cover, which includes Ebony's marks. Compl. ¶ 22 & Ex. C. The Parody Cover includes mock headlines that pillory Ebony's treatment of its black writers. Compl. ¶ 23 & Ex. C. The parody headlines read: "Special Deadbeat Edition: #EbonyStillOwes"; "Cheat your black writers by not paying? Ebony owners Michael

---

[2] The Court may take judicial notice of the Article and Lawsuit. *See, e.g.*, *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *Rothman v. Gregor*, 220 F.3d 81, 88–89 (2d Cir. 2000)).

Gibson & Willard Jackson show us how!"; "Ebony 100 Gala: Let Them Eat Cake! 101 Ways Ebony Doesn't Pay Writers...But Holds Gala Banquet w/ Chris Tucker"; "New Ebony Owners: Michael Gibson and Willard Jackson The Slow Play Kings of Black Biz"; and "December 2018: Thousands in Back Pay."  Compl. ¶ 23.  To "help the protest" on behalf of the writers, the Article suggests readers share the Parody Cover on social media and with sponsors of Plaintiff's gala, along with the explanation that Plaintiff still "owes thousands to writers" and the exhortation "Your #EbonyChallenge is to stand with the writers."[3]  Article at 3; Compl. ¶¶ 23–24.

Plaintiff's suit alleges that the publication of the Article and/or Parody Cover constitutes (1) trademark infringement, false advertising, and trademark dilution under the federal Lanham Act; (2) tortious interference with prospective economic advantage and unfair competition under state common law; and (3) unlawful trade practices under New York General Business Law ("GBL") § 349.

Plaintiff bases its claims on conclusory allegations that the Article and/or Parody Cover (1) used Plaintiff's marks to "tarnish Plaintiff's brand and divert consumers and advertisers to *The Root*," Compl. ¶ 20; (2) "has damaged and/or will damage Plaintiff's relationships with its customers, and/or is likely to confuse potential customers and potential customers," *id.* ¶ 39; and (3) "diver[ts] . . . sales from [Plaintiff's] products to that of Defendants and/or . . . lessen[es] . . . goodwill associated with Plantiff's products," *id.* ¶ 57.  Plaintiff also concludes, on information

---

[3] The Article transformed the existing #EbonyChallenge, which implored readers to share *Ebony* covers from their birthday month and year on social media, into a mechanism for criticism of the company.  Article at 1–3.  As the Article explains "if Ebony is gonna pimp our black connective tissue for social media likes and shares, then the least they can do is respect the black writers that created the content."  *Id.* at 3.

and belief only, that it lost online viewers and readers, and attendant advertising sales and revenue.  *Id.* ¶¶ 28–30.

## ARGUMENT

### I.   THE COURT SHOULD DISMISS PLAINTIFF'S FEDERAL LAW CLAIMS UNDER RULE 12(B)(6) FOR FAILURE TO STATE A PLAUSIBLE CLAIM FOR RELIEF

The Court should dismiss Plaintiffs' federal claims under Rule 12(b)(6) because Plaintiff has failed to allege, and cannot allege, "sufficient factual matter, accepted as true, to 'state [] claim[s] to relief that [are] plausible on [their] face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rather, Plaintiff improperly seeks to silence Defendants' protected free expression under the guise of baseless claims.

#### A.  Plaintiff Has Not Stated a Plausible Claim for Trademark Infringement

Plaintiff has failed to allege, and cannot allege, a viable claim for trademark infringement arising from the depiction of Plaintiff's marks on the Parody Cover.[4]  First, Plaintiff cannot plausibly contend "any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be" confused over whether Plaintiff originated, sponsored, or approved the Parody Cover.  *Savin Corp. v. Savin Group*, 391 F.3d 439, 456 (2d Cir. 2004); *see also* 15 U.S.C. § 1125(a).  Second, the Parody Cover uses Plaintiff's marks for expressive purposes protected by the First Amendment and any "public interest in avoiding [purported] consumer confusion" fails to "outweigh[] the public interest in free expression."  *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Group, Inc.*, 886 F.2d 490, 494 (2d Cir. 1989).

---

[4] Plaintiff's trademark infringement claim challenges the Parody Cover and not the Article. Compl. ¶ 33 (alleging in its trademark infringement claim that "Defendants have used Plaintiff's trademarks in the Image"); *id.* ¶ 22 (defining Parody Cover as the "Image").

1.   The Parody Cover creates no likelihood of confusion

Plaintiff has not plausibly alleged, and cannot plausibly allege, that the Parody Cover creates any likelihood of confusion, since the work is a parody that is harshly critical of Plaintiff.

The Court is to evaluate the likelihood of confusion under the "nominative fair use" test, given that Plaintiff's infringement claim attacks Defendants' "nominative" use of Plaintiff's marks to identify, not Defendants' goods or services, but the Plaintiff's magazine and company. *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016) (nominative use is the "use of another's trademark to identify, not the defendant's goods or services, but the plaintiff's goods or services (quoting 4 McCarthy on Trademarks and Unfair Competition § 23:11 (5th ed.)).  Under the nominative use doctrine, "a defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." *Id*. at 168.

To analyze a likelihood of confusion in nominative use cases, courts typically consider the well-known *Polaroid* factors[5] along with three factors related to the nominative nature of the use:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's

---

[5] The *Polaroid* factors are: (i) the strength of plaintiff's mark; (ii) the similarity of the parties' marks; (iii) the proximity of the parties' products in the marketplace; (iv) the likelihood that the prior user will bridge the gap between the products; (v) actual confusion; (vi) the defendant's good or bad faith in adopting the mark; (vii) the quality of defendant's product; and (viii) the sophistication of the relevant consumer group.  *Polaroid Corp. v. Polarad Electronics Corp*., 287 F.2d 492, 495 (2d Cir. 1961).

> conduct or language reflects the true or accurate relationship
> between plaintiff's and defendant's products or services.

*Id*.  The Second Circuit has, however, recognized that the *Polaroid* factors are "awkward" to apply to parody uses, like the Parody Cover, since "[t]he *Polaroid* test has its origin in cases of purely commercial exploitation, which do not raise First Amendment concerns." *Cliff Notes*, 886 F.2d at 495 n.3.  For this reason, the Court may rule on the "ultimate question"—whether consumers are likely to be confused—without evaluating the factors individually.  *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000); *see also Cliff-Notes*, 886 F.2d at 495–97 (finding no likelihood of confusion over parody product without examining *Polaroid* factors); *Rogers v. Grimaldi*, 875 F.2d 994, 1001 (2d Cir. 1989) (same regarding title of expressive work).

Here, it is not plausible that anyone would be confused whether Plaintiff created, sponsored, or approved the Parody Cover, since the Parody Cover is a biting critique of Ebony and supports Ebony's writer-protestors.  Indeed, the Parody Cover's highly critical headlines make it impossible for anyone to be confused about Plaintiff's connection to the work.  As set forth above, the Parody Cover (1) characterizes Ebony as a "*deadbeat*"; (2) criticizes Ebony for owing its writers *thousands* of dollars in back pay; (3) labels Ebony's co-owners as "*cheats*"; and (4) pillories Ebony for hosting a lavish gala while its writers remained unpaid.  Compl. ¶ 23 & Ex. C.

Courts uniformly hold that obvious parody of the type contained in the Parody Cover unquestionably negates the possibility of confusion.  *See, e.g*., *Underwriters, Inc. v. Lichtenegge*r, 913 F.3d 884 (9th Cir. 2019) (likelihood of confusion was "implausible" where defendant's seminar criticized Plaintiff's products and services); *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 505 (2d Cir. 1996) (obvious nature of parody, even where inoffensive, is strong evidence that consumers are not likely to be confused); *Lombardo v. Dr.*

*Seuss Enterprises, L.P.*, 279 F. Supp. 3d 497, 515 (S.D.N.Y. 2017), *aff'd*, 729 F. App'x 131 (2d Cir. 2018) ("[T]he public interest in free expression clearly outweighs any interest in avoiding consumer confusion, the likelihood of which is extremely minimal given the parodic nature of the Play."); *1800 GET THIN, LLC v. Hiltzik*, No. 11-cv-0505 (ODW), 2011 WL 3206486, at *3 (C.D. Cal. July 25, 2011) ("Defendants have not done anything that would suggest Plaintiff has sponsored or endorsed Defendants' use of Plaintiff's claimed trademark because the articles and comments . . . do not portray Plaintiff in a positive light"); *Patmont Motor Werks, Inc. v. Gateway Marine, Inc*., No. C 96-2703 (THE), 1997 WL 811770, at *4 (N.D. Cal. Dec. 18, 1997) ("[N]othing in [the challenged] website could possibly be construed to indicate [Plaintiff]'s sponsorship or endorsement. Indeed, the Court would find incredible any argument to the contrary given the website's disparagement of [Plaintiff's products] as unsafe and of [Plaintiff's] management as criminally anti-competitive."); *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 273 (S.D.N.Y. 1992) ("While there is no doubt that *New York* published on its cover a recognizable imitation or caricature of the *Almanac*'s trade dress, I find this was done in a manner that made it sufficiently clear to consumers that it was a joke and not a trademark source identifier. . . . It is quickly recognizable . . . that the artwork is a joking deviation from . . . the *Almanac*."); *see also New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 308–09 (9th Cir. 1992) (no likelihood of confusion, in part, where challenged use "ask[s] whether the New Kids might be 'a turn off.'").

In addition, Defendants' use satisfies the nominative fair use factors.  There is only one way to readily identify Plaintiff's magazine cover, and that is by using Plaintiff's marks.  *See, e.g*., Compl. ¶ 15 (alleging that "the EBONY Marks are distinctive and famous.").  Defendants use only what is reasonably necessary—the Ebony marks as they appear on *Ebony* magazine

covers—to parody Plaintiff's *Ebony* magazine cover.  *See Cliff Notes*, 886 F.2d at 494 ("[T]he keystone of parody is imitation."); *Girl Scouts of U.S. of Am. v. Bantam Doubleday Dell Pub. Group, Inc.*, 808 F. Supp. 1112, 1121 (S.D.N.Y. 1992), *aff'd* 996 F.2d 1477 (2d Cir. 1993) ("By definition, parody requires resemblance to the original near enough so that the public will recognize the parodist's artistic object.").  And, as set forth above, the Parody Cover, which skewers Plaintiff, obviously does nothing to suggest Plaintiff's sponsorship or endorsement.[6]

> 2.  The public interest in furthering Defendants' free expression would outweigh any risk of confusion, even if such a risk existed

Even if Plaintiff could plausibly allege any likelihood of confusion, Defendants' First Amendment right to publish the Parody Cover would outweigh any risk of confusion.  The Parody Cover is an expressive work entitled to the full protection of the First Amendment both because it is a parody and because it is a social criticism.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 57 (1988) (parody protected by the First Amendment); *Berlin v. E.C. Publications, Inc.*, 329 F.2d 541, 545 (2d Cir. 1964) ("[P]arody and satire are deserving of substantial freedom— both as entertainment and as a form of social and literary criticism."); *Yankee Pub.*, 809 F. Supp. at 276 ("[E]xpressive purposes of comedy, parody, allusion, criticism, news reporting, and commentary" are protected by the First Amendment).

Where, as here, "overextension of Lanham Act restrictions . . . might intrude on First Amendment values," the Court "must construe the Act narrowly to avoid such a conflict."  *Cliffs Notes*, 886 F.2d at 494; *see also Yankee Pub.*, 809 F. Supp. at 276 (citing *Rogers*, 875 F.2d at

---

[6]  Plaintiff effectively concedes that it has no basis to allege the requisite confusion.  Indeed, Plaintiff pleads its alleged likelihood of confusion only in the alternative, as a mere possibility. *See* Compl. ¶ 39 ("Defendant's unlawful use Plaintiff's trademarks has damaged and/or will damage Plaintiff's relationships with customers, *and/or* is likely to confuse potential customers and potential customers." (emphasis added)).  Plaintiff's evasive "and/or" pleading fails to plausibly allege likelihood of confusion because it establishes only a "possibility," as opposed to the required "plausibility," that any likelihood of confusion exists.  *Twombly*, 550 U.S. at 577.

999).   Accordingly, the Lanham Act applies to expressive works "only where the public interest in avoiding consumer confusion outweighs the public interest in free expression."  *Cliff Notes*, 886 F.2d at 494; *accord Rogers*, 875 F.2d at 999; *see also Yankee Pub.*, 809 F. Supp. at 276 ("Where the unauthorized use of a trademark is for expressive purposes of . . . parody [or] criticism . . . the law requires a balancing of the rights of the trademark owner against the interests of free speech."); *cf. New Kids on the Block*, 971 F.3d at 307 ("Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark.").

The public interest in furthering Defendants' expressive activities is paramount and unquestionably outweighs any arguable risk of confusion stemming from the Parody Cover.  The Parody Cover expresses important speech critical to the public discourse about Plaintiff's treatment of its black writers and seeks to help get the writers paid.  This is unquestionably a matter of public importance, as evidenced by the many news outlets that covered the story.[7] Indeed, courts in this Circuit have not hesitated to favor the public interest in free expression in far less weighty matters.  *See, e.g.*, *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 340-41 (S.D.N.Y. 2000) (First Amendment concerns outweighed risk of confusion from comic

---

[7] *E.g.*, Alice Bazerghi, *Ebony settles lawsuit with National Writers Union over unpaid work*, Chi. Sun Times (Feb. 28, 2018); Robert Channick, *Freelancers sue Ebony Magazine, claiming $70,000 in unpaid work*, Chi. Trib. (Sept. 6, 2017); Karen Grigsby Bates, *#EbonyOwes: 99 Problems And Money Is One*, NPR (July 17, 2017); Ginger Adams Otis, *Writers union sues Ebony Media for failing to pay $200,000 to 50 freelancers*, N.Y. Daily News (July 14, 2017); Ashley Pickens, *#EbonyOwes Freelancers Send A Message To The Magazine: "See You In Court!"*, Vibe (July 12, 2017); Jagger Blaec, *Why Isn't 'Ebony' Paying Its Black Writers*, Medium (Apr. 24, 2017).

book parodying body building advertisement); *Yankee Pub.*, 809 F. Supp. at 279 (S.D.N.Y. 1992) (same for parody of Farmer's Almanac).

### B. Plaintiff Has Not Stated a Plausible Claim for False Advertising

Plaintiff has failed to state, and cannot state, a viable claim for false advertising because the Article and Parody Cover are neither commercial advertisements nor false or misleading in any material way. *See* 15 U.S.C. § 1125(a)(1)(B); *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 58 (2d Cir. 2002) (challenged false statement must constitute "advertising and promotion"); *Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997) (challenged false statement must be "material" to consumers).

The Article and Parody Cover are not commercial advertisements because they are not "commercial speech" "made for the purpose of influencing the purchasing decisions of the consuming public." *Fashion Boutique*, 314 F.3d at 56–57 (emphasis added). They are expressive works—the legal opposite of commercial speech. *See*, *e.g.*, *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 385 (1973) (newspaper's "profit motive" cannot render a news article "commercial speech"; such a conclusion "would be incompatible with the First Amendment"); *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964) (a newspaper article does not communicate commercial speech; instead, it "communicates information, expresses opinion, [and] recites grievances, . . . ."); *Farah v. Esquire Magazine*, 736 F.3d 528, 541 (D.C. Cir. 2013) (online post not commercial speech); *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1186 (9th Cir. 2001) (same); *Manigault v. ABC Inc.*, No. 17-CV-7375 (KNF), 2018 WL 5818101, at *5 (S.D.N.Y. Oct. 10, 2018) (television news report).

The Article and Parody Cover are also not actionable as "false advertising" because Plaintiff has not plausibly alleged, and cannot plausibly allege, that the Article or Parody Cover are false and misleading in any material way. Plaintiff does not dispute the main points the

Article and Parody Cover address, namely that (1) Plaintiff had failed to pay thousands of dollars to its black writers; (2) a writer's union filed the Lawsuit to force Plaintiff to pay certain writers their back pay; (3) Plaintiff failed to timely pay those writers even under the terms of the settlement that resolved the case; and (4) Plaintiff was hosting a gala event while other writers remained unpaid.  Instead, Plaintiff quibbles on the margins, including over reporting that Plaintiff concedes is true:

1.  Plaintiff alleges that the Article "falsely" reports that the 11-year old winner of an Ebony award "was not invited" to Ebony's gala.  *See* Compl. ¶¶ 21, 21(b).  Yet Plaintiff's Complaint concedes that Plaintiff had *not* invited that winner to the event.  *See id.* ¶ 21(b) (explaining that winner "typically does not attend" and stating that Plaintiff "later" invited her).

2.  Plaintiff alleges that the Article falsely reports that Plaintiff missed its payment deadline under a court-ordered settlement, when, in fact, Plaintiff was current on its settlement payments at the time of the Article's publication and the settlement was not court-ordered.  *See* Compl. ¶ 26.  Plaintiff, however, does not dispute that Plaintiff had missed a payment deadline under the settlement and continued to owe writers unpaid wages, regardless of that cure.  In the context of the Article as a whole, it is immaterial that Plaintiff had cured one payment default at the time of the Article's initial publication.  Whether the settlement was court ordered or a voluntary settlement of a court action is also immaterial.[8]

3.  Plaintiff complains that the Article "misrepresents the purpose of Ebony's Power 100 Gala" and "accuses Plaintiff of 'spending the thousands owed to black writers' on an expensive

---

[8]  Defendants updated the Article the day after it was published to state that Plaintiff had cured its payment default under the settlement prior to the Article's initial publication.  Compl. ¶ 26. The Article has also been updated to clarify that the settlement was not court ordered.  *See* Arato Decl., Ex. C (the Article as corrected Jan. 4, 2019).

venue and expensive meals," when, in fact, "proceeds of the event are donated to the Sickle Cell

Disease Association" and "event sponsors provide a significant amount of support for the event."

Compl. ¶ 21(c).  Those allegations—that Plaintiff donates profits from the gala to charity and

sponsors partially underwrite the event—do not contradict the Article's statements that Plaintiff

spent money on the event to promote its brand, while its writers went unpaid.  Article at 2.

### C.  Plaintiff Has Not Stated a Plausible Claim for Dilution

Plaintiff cannot state a claim for dilution regarding the Article or Parody Cover because

the Lanham Act provides that "identifying and parodying, criticizing, or commenting upon [a]

famous mark owner or the goods or services of [a] famous mark owner," as well as "[a]ll forms

of news reporting and news commentary," are "not actionable as dilution."  15 U.S.C.

§ 1125(c)(3).  Plaintiff concedes that the Article is news reporting, Compl. ¶¶ 13, 16 (alleging

that Plaintiff's magazine is a news provider and that Defendants magazine is a direct

competitor), and Plaintiff cannot legitimately challenge the parody nature of the Parody Cover,

*see* Section I.A, *supra*.[9]

## II.  THE COURT SHOULD DISMISS PLAINTIFF'S STATE LAW CLAIMS UNDER THE TEXAS ANTI-SLAAP STATUTE, OR, IN THE ALTERNATIVE, RULE 12(B)(6)

The Court should dismiss Plaintiff's state law claims for tortious interference with

prospective economic advantage, common law unfair competition, and alleged violations of the

New York GBL under the Texas anti-SLAPP statute.  The Court should apply the Texas anti-

SLAPP statute to Plaintiff's state law claims, which arise under Texas common law and the New

York GBL, because those claims are based on Defendants' exercise of free speech.  The Court

---

[9] Plaintiff complains about an additional purported "misrepresentation" in the Article holding the company's owners responsible for not paying the black writers.  *See* Compl. ¶ 21(a).  Plaintiff does not explain how the Article's statement is purportedly false.  *Id.*

should dismiss Plaintiff's state law claims under the Texas anti-SLAPP statute because Plaintiff

cannot establish a prima facie case for each essential element of its claims.[10]   In the alternative,

the Court may dismiss the claims under Rule 12(b)(6).

### A. Texas Law Governs Plaintiff's Claims for Tortious Interference and Unfair Competition and Application of the TCPA

The Court applies New York's choice-of-law rules to determine which state's law

governs Plaintiff's state law claims.  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir.

1999); *see also Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Under New

York's choice-of-law rules, the Court first determines whether there is an actual conflict between

the States' laws.  *See In re Allstate Ins. Co.*, 81 N.Y.2d 219, 223 (1993).  If there is an actual

conflict, the Court employs an "interest analysis" to apply the law of the State having the greatest

interest in the litigation.  *Schultz v. Boy Scouts of Am., Inc*., 65 N.Y.2d 189, 196–97 (1985).

### 1.   There is an actual conflict between Texas and New York law

There is an actual conflict between the laws of Texas and New York because "the

applicable law from each jurisdiction provides different substantive rules" that are "relevant to

the issue at hand" and "have a significant *possible* effect on the outcome."  *Fin. One Pub. Co. v.*

*Lehman Bros. Special Fin.*, 414 F.3d 325, 331 (2d Cir. 2005) (internal citations and quotations

omitted) (emphasis in original).

Tortious interference.  Under New York law, a defendant can be liable if he *either*

effectuated the interference through "wrongful means" (conduct that is either "criminal or

independently tortious") *or* acted "for the sole purpose of inflicting intentional harm on

plaintiff[]."  *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190–91 (2004).  This "sole purpose"

---

[10] State anti-SLAPP statutes, like the Texas anti-SLAPP statute, apply in federal court to state law claims (*Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 148 (2d Cir. 2013)).

requirement is strictly construed.  If a defendant acts to further his own economic interest, even if

only in part, he cannot have acted for the sole purpose of harming the plaintiff.  *Id.* at 191;

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 190–91 (1980); *Out of Box

Promotions, LLC v. Koschitzki*, 55 A.D.3d 575, 577 (N.Y. App. Div. 2d Dep't 2008); *Campo v.

1st Nationwide Bank*, 857 F. Supp. 264, 273 (E.D.N.Y. 1994).

In contrast, in Texas, a defendant can be liable for the tort only if the defendant *both*

employed wrongful means *and* acted with Texas' requisite state of mind.  Under Texas law, a

defendant is liable for the tort only if his conduct was *both* "independently tortious or unlawful"

*and* he "acted with a conscious desire to prevent the relationship from occurring or knew the

interference was certain or substantially certain to occur as a result of the conduct."  *Coinmach

Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013).  Unlike New York,

Texas rejects the concept of economic self-interest as a defense to a tortious interference claim

except to the extent it is a defense to the independent tortiousness of the defendants' alleged

conduct.  *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726–27 (Tex. 2001).

Common Law Unfair Competition.  Under New York law, a defendant is liable for unfair

competition only if he acted in bad faith to "misappropriate[e] . . . the labors and expenditures of

another" in order "to cause confusion or to deceive purchasers as to the origin of the goods."

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995); *see also Big

Vision Private Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 275 (S.D.N.Y. 2014),

*aff'd* 610 F. App'x 69 (2d Cir. 2015) ("Bad faith is an essential element of an unfair competition

claim.").

In contrast, under Texas law, "intent is not a necessary element to be proved in order to

prevail in an unfair competition claim."  *Jud Plumbing Shop on Wheels, Inc. v. Jud Plumbing &*

*Heating Co.*, 695 S.W.2d 75, 78 (Tex. Ct. App. 1985); *Taylor Made Golf CO., Inc. v. MJT Consulting Grp., LLC.*, 265 F. Supp. 2d 732, 745 (N.D. Tex. 2003) (intent is not required).

  <u>Anti-SLAPP</u>.  Texas has a broad anti-SLAPP statute covering legal actions relating to a party's exercise of the right of free speech, the right to petition, and the right of association.  Tex. Civ. Prac. & Rem. Code ("TCPA") § 27.001.  New York's anti-SLAPP statute is narrower and applies only when the lawsuit implicates the defendant's right to petition and to participate in petitioning activities.  N.Y. Civ. R. § 70-a & 76-a.

    2. Texas has the greatest interest in Plaintiff's common law claims and the application of its anti-SLAPP law

  Texas has the greatest interest here because the common law torts allegedly occurred in Texas, where Plaintiff is located, and Texas has the greatest interest in promoting free speech concerning the citizens of its State and in curtailing abusive filings by its citizens.

  <u>The alleged common-law torts</u>.  To determine which state has the greatest interest, the Court analyzes the states' relationship or contact with the occurrence or the parties as they relate to the purpose of the particular law in conflict.  *Schultz*, 65 N.Y.2d at 196–97.  For tort claims, "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort."  *AroChem Int'l, Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992).  Where, as here, the tort imposes conduct-regulating (as opposed to loss-allocating) rules, and "the parties are domiciled in different states, the locus of the tort will almost always be determinative."  *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996); *AroChem*, 968 F.2d at 270 (same); *Hidden Brook Air, Inc. v. Thabet Aviation Int'l Inc.*, 241 F. Supp. 2d 246, 277 (S.D.N.Y. 2002) (claim for tortious interference is conduct-regulating); *Torah Soft Ltd. v. Drosnin,* 224 F. Supp. 2d 704, 720 (S.D.N.Y. 2002) (same for unfair competition).

The locus of Plaintiff's claim for tortious interference is Texas because (1) the locus of the tort is where Plaintiff's claim accrued, *Gray v. Busch Entm't Corp.*, 886 F.2d 14, 15 (2d Cir. 1989); (2) the claim accrued where Plaintiff allegedly suffered its injury or damages, *id.*; *cf.* Restatement of Conflict of Laws § 377 (tort occurred where the completing event happened, normally the injury); (3) Plaintiff, a corporate entity, suffered its alleged injuries in the state of its principal place of business, *Hidden Brook Air*, 241 F. Supp. 2d at 277; *Discover Grp., Inc. v. Lexmark Int'l, Inc.*, 333 F. Supp. 2d 78, 85 (E.D.N.Y. 2004); and (4) Plaintiff's principal place of business is Texas (where it is also incorporated), Compl. ¶ 1.

The locus of Plaintiff's claim for unfair competition is also Texas.  New York courts have not ruled on whether the locus-of-injury rule applies to unfair competition claims.   However, unfair competition is not an independent, stand-alone tort; it is a vehicle through which liability may be imposed for the commission of other unlawful acts.  *See Taylor Pub. Co. v. Jostens*, 216 F.3d 465, 486 (5th Cir. 2000) (plaintiff must show an "illegal act" by defendant); *Roy Exp. Co. Establishment of Vaduz, Liechtenstein v. Columbia Broad. Sys., Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (noting that unfair competition encompasses a variety of "illegal practices").

 The locus of an unfair competition claim, therefore, should track the locus of the underlying tort on which the unfair competition claim is predicated.  *Cf. Trustforte Corp. v. Eisen*, 10 Misc. 3d 1064(A), 814 N.Y.S.2d 565 (N.Y. Sup. Ct. 2005) (statute of limitations for unfair competition tracks the limitations period applicable to underlying tort on which unfair competition claim is based).  To the extent Plaintiff premises its unfair competition claim on any alleged tortious interference, that alleged tort occurred in Texas for the reasons set forth above. To the extent Plaintiff premises its claim on federal trademark violations, those claims also occurred in Texas because that is where Plaintiff suffered its alleged injuries.  *See*, *e.g.*,

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) ("brunt of the harm" to trademark holder was felt in state where it had its principal place of business); *Enterprise Rent-A-Car Company v. U-Haul Intern., Inc.*, 327 F. Supp. 2d 1032, 1043 (E.D. Mo. 2004) ("The economic effects of the tort of trademark infringement 'are felt where the trademark owner has its principal place of business.'"); *Armoloy Corp. v. Indus. Hard Chromium Co.*, No. 02-CV-50071, 2002 WL 1284286, at *2 (N.D. Ill. June 5, 2002) (same).

Finally, no state has a more significant interest than Texas.  Even if Plaintiff were to allege that Defendants' conduct occurred in New York, where Defendants are located, the place of Defendants' conduct has limited significance given that the Article and Parody Cover were published on the Internet.  *Cf. Tobinick v. Novella*, 108 F. Supp. 3d 1299, 1304 (S.D. Fla. 2015) (applying law of state of plaintiff's domicile, in part because "[a]ny relationship that exists between the parties is not centered in a particular state, given that the statements at issue were made on the internet."); *Containment Techs. Grp., Inc. v. Am. Soc. of Health Sys. Pharmacists*, No. 07-CV-0997, 2009 WL 838549, at *6 (S.D. Ind. Mar. 26, 2009) (same regarding anti-SLAPP statute because "the place of the tort is not significant. The article was published across the country, and the alleged tort occurred equally in every state.").

Anti-SLAPP.  The Court should apply the Texas anti-SLAPP statute to Plaintiff's state law claims because Texas has the greatest interest in applying the Statute to tort claims brought by a Texas-based company that seek to chill the exercise of free speech regarding the company's practices.

The Texas legislature enacted the TCPA to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law."  TCPA § 27.002.  In particular, the TCPA

19

provides a mechanism for early dismissal of "retaliatory lawsuits that seek to intimidate or silence [defendants] on matters of public concern." *See In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). Upon dismissal of the retaliatory claims, the TCPA directs courts to award attorney's fees to the moving party and to sanction the party filing the claims to deter that party "from bringing similar actions." TCPA § 27.009. The statute is to "be construed liberally to effectuate its purpose and intent fully . . . ." *Id*. § 27.011.

Plaintiff, a Texas-based corporation, incorporated under the laws of Texas, has filed a retaliatory suit to stifle criticism on the internet about its unfair labor practices. As stated expressly in the TCPA, Texas wishes to "encourage and safeguard the constitutional rights of persons," like Defendants, to speak freely about such matters of public concern. One of the statute's main purposes, moreover, was to further the important growth of free speech in the "internet age." House Comm. on Judiciary & Civil Jurisprudence, Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011). Texas has an especially keen interest in safeguarding free speech on the internet here, since it has a significant interest in ensuring that the conduct of its corporate citizens is fully examined and that the citizens of its State are fully informed about such matters. Texas also has a significant interest in ensuring that the damages and sanctions provisions of the TCPA can be applied against Plaintiff, so that Plaintiff is properly dissuaded from filing similar retaliatory suits in the future.

In contrast, New York has no natural interest in the application of its anti-SLAPP statute to this case. The case involves state law claims that allegedly accrued in Texas, and allegedly injured a Texas citizen, and the common law torts are governed by Texas substantive law.

**B.  The Court Should Dismiss Plaintiff's State Law Claims Pursuant to the TCPA**

The Court should dismiss Plaintiff's state law claims under the Texas anti-SLAPP statute because the claims (1) seek to retaliate against Defendants' exercise of their free speech rights, and (2) are meritless.

Courts apply a two-step process to determine whether claims must be stricken under the Texas anti-SLAPP statute.  At the first step, the burden is "on the defendant-movant to show 'by a preponderance of the evidence' that the plaintiff's claim 'is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association.'" *Lipsky*, 460 S.W.3d at 586 (citing TCPA § 27.005(b)).  "If the movant is able to demonstrate that the plaintiff's claim implicates one of these rights," the burden shifts to the plaintiff at the second step to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question."  *Id.* at 587 (citing TCPA § 27.005(c)).  A plaintiff makes this showing by coming forward with "evidence sufficient as a matter of law to establish a given fact."  *Id.* at 590.  If the plaintiff fails to meet its burden, the court "shall dismiss [the] legal action."  TCPA § 27.005(b).

1.  Plaintiff's claims are based on, relate to, and are in response to Defendants' exercise of their right of free speech

Plaintiff's state law claims arise out of Defendants' exercise of their right to free speech because the claims attack communications that Defendants "made in connection with a matter of public concern."  TCPA § 27.001(3); *Lipsky*, 460 S.W.3d at 586 n.4.  The TCPA provides that matters of public concern "include" matters relating to . . . economic, or community well-being" or "a good, product, or service in the marketplace."  TCPA §§ 27.001, 27.001(3), (7)(B) & (E). In addition, the Supreme Court of Texas has explained that "speech 'deals with matters of public concern' when it can 'be fairly considered as relating to any matter of political, social, or other

concern to the community,'" including "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (citing *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)); *see also Tu Nguyen v. Duy Tu Hoang*, 318 F. Supp. 3d 983, 998 (S.D. Tex. 2018) (applying *Brady* standard in TCPA case).

The Article and Parody Cover qualify as matters of public concern under the express provisions of the TCPA since they concern "economic, or community well-being" and relate to "a good, product, or service in the marketplace"— namely how *Ebony*, the self-proclaimed "heart, []soul and [] pulse of Black America," Compl. ¶ 14, failed to pay its own black writers. TCPA § 27.001(7)(B) & (E). Ebony's practices are also the subject of legitimate news interest. Indeed, those practices were the subject of the Lawsuit and other articles. *See supra* n.7.

       2.   Plaintiff cannot establish a prima facie case of tortious interference or unfair competition

The Court must dismiss Plaintiff's state law claims because Plaintiff cannot establish "by clear and specific evidence a prima facie case for each essential element" of its claims. *Lipsky*, 460 S.W.3d at 592. Plaintiff has not even plausibly *alleged* each such element.

<u>Tortious Interference</u>. Plaintiff has failed to allege a valid claim, and cannot make a prima facie showing, of tortious interference with prospective economic advantage, namely: (1) a reasonable probability that Plaintiff would have entered into a future business relationship with a third party; (2) that Defendants acted with a conscious desire to prevent the relationship or knew the interference was likely to occur; (3) Defendants' conduct was independently tortious or unlawful; (4) the alleged interference proximately caused Plaintiff injury; and (5) actual damages or loss. *Coinmach*, 417 S.W.3d at 923.

Plaintiff has failed to allege that Plaintiff would have entered into a business relationship with a third party since Plaintiff fails to allege any "specific facts" about any such party. *Camp*

*v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904, at *8 (Tex. Ct. App. Aug. 3, 2017).

Although Plaintiff alleges (on information and belief only) that it "lost ad sales and revenue,"

Compl. ¶¶ 28–30, and "had business relationships with third parties that were very likely to

result in economically-advantageous relationships between Plaintiff and third parties," *id*. ¶ 63,

Plaintiff fails to identify any lost advertisers, customers, advertisements, or business.  That is

fatal to Plaintiff's claim.  *Camp*, 2017 WL 3378904, at *8 (dismissing interference claim under

TCPA because "there is no evidence of a specific party with whom [the plaintiff] had a

reasonable probability of entering into a business relationship absent [the defendant's] emails.").

Plaintiff also fails properly to allege Defendants' wrongful state of mind.  Plaintiff fails to

allege that Defendants knew that any interference with Plaintiff's unidentified relationships was

likely to occur.  While Plaintiff alleges that Defendants acted to prevent or impair these

relationships, the Article explains that the writer sought to help Ebony's black writers get paid,

and Plaintiff alleges no specific facts to support its contrary conclusion.  *See, e.g.*, *Greater*

*Houston Transp. Co. v. Uber Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19–20

(S.D. Tex. Mar. 10, 2015) (dismissing interference claim for lack of sufficient factual

allegations).

As explained above, because nothing in the Article or Parody Cover can constitute

trademark infringement, false advertising, or dilution, Plaintiff also has not alleged, and has no

chance of establishing, that Defendants engaged in any independently unlawful act.

Finally, Plaintiff fails to plead specific facts demonstrating that the Article or Parody

Cover proximately caused Plaintiff injury or that Plaintiff suffered any actual damages or loss.

Indeed, Plaintiff all but concedes that it did *not* suffer any such damage or harm, since it alleges

*its own* supposed lost ad sales and revenues only on information and belief.  Compl. ¶¶ 28–30.

Unfair Competition.  Plaintiff also has failed to allege a valid claim, and cannot make a prima facie showing, of unfair competition.  In Texas, unfair competition "is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters [and] requires that the plaintiff show an illegal act by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor Pub. Co.*, 216 F.3d at 486 (citations and internal quotations omitted).  For the reasons stated herein, Plaintiff has not alleged, and cannot demonstrate, that Defendant engaged in any illegal act.

New York GBL.  Plaintiff has similarly failed to allege a valid claim, and cannot make a prima facie showing, of unfair competition under the GBL.  Plaintiff has not alleged, and cannot plausibly allege, significant purported "harm to the public at large"—akin to a "potential danger to the public health or safety"—stemming from its ordinary claim for trademark infringement. *Boule v. Hutton*, 328 F.3d 84, 94 (2d Cir. 2003) (stating standard for asserting GBL claim against a competitor); *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003).  "Trademark . . . infringement claims are not cognizable under [GBL § 349] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution." *National Distillers Prods. Co. v. Refreshment Brands, Inc.*, 198 F. Supp. 2d 474, 486–87 (S.D.N.Y. 2002); *see also Gucci*, 277 F. Supp. 2d at 273 (same).

Plaintiff's claim also fails because the Article and Parody Cover (1) do not propose any commercial transaction and are protected free speech, *see N.Y. Pub. Interest Research Group, Inc. v. Ins. Info. Inst.*, 554 N.Y.S.2d 590, 592 (N.Y. App. Div. 1st Dep't 1990) (GBL inapplicable even to advertisements seeking to influence public opinion that did not propose a commercial transaction and were protected by the First Amendment); and (2) are neither false

24

nor misleading, *see* Section I.B, *supra*; *see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995).

### C.  The Court Also May Dismiss Plaintiff's State Law Claims Under Rule 12(b)(6)

In the alternative, the Court may dismiss Plaintiff's state law claims under Rule 12(b)(6) for the reasons set forth in Section II.B.2, *supra*.[11]

### <u>CONCLUSION</u>

For the reasons set out above, Defendants respectfully request that the Court dismiss the Complaint with prejudice under Rule 12(b)(6) and the TCPA.

Dated: February 7, 2019
New York, New York

/s/ Cynthia S. Arato
Cynthia S. Arato
Lauren M. Capaccio
SHAPIRO ARATO BACH LLP
500 Fifth Avenue, 40th Floor
New York, NY 10110
carato@shapirorarato.com
lcapaccio@shapiroarato.com
(212) 257-4880

*Attorneys for Defendants*

---

[11] Plaintiff's common law claims also fail under New York law.  Plaintiff's claim for tortious interference fails because Plaintiff has not plausibly alleged that Defendants directly interfered with an identified third party with whom Plaintiff had prospective business relations, either employed wrongful means or acted for the sole purpose of inflicting intentional harm on Plaintiff, or proximately caused any injury to Plaintiff's business relations.  *See Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214 (2d Cir. 2002); *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004); *Twelve Inches Around Corp. v. Cisco Sys., Inc.*, No. 08-CV-6896 (WHP), 2009 WL 928077, at *5 (S.D.N.Y. Mar. 12, 2009).  Plaintiff's claim for unfair competition fails because Plaintiff has not plausibly alleged any Lanham Act violation or that Defendants acted in bad faith.  *See C=Holdings B.V. v. Asiarim Corp.*, 992 F. Supp. 2d 223, 244 (S.D.N.Y. 2013); *Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.*, 220 F. Supp. 2d 289, 298 (S.D.N.Y. 2002).