UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
                    USDC SDNY
                    DOCUMENT
                    ELECTRONICALLY FILED
                    DOC #:_____
                    DATE FILED: 6/3/19
```

------------------------------------------------------------ x

EBONY MEDIA OPERATIONS, LLC,                    :
                                                :
                                  Plaintiff,    :        **ORDER GRANTING**
                                                :        **DEFENDANTS' MOTION TO**
                -against-                       :        **DISMISS**
                                                :
UNIVISION COMMUNICATIONS INC.,                  :        18 Civ. 11434 (AKH)
FUSION MEDIA GROUP, LLC, and GIZMODO            :
MEDIA GROUP, LLC,                               :
                                                :
                                  Defendants.   :
------------------------------------------------------------ x

ALVIN K. HELLERSTEIN, U.S.D.J.:

This case presents an interesting question of trademark law: whether, in the case

of a famous magazine trademark, a competitor-magazine is guilty of infringing or diluting the

famous mark, and other wrongs, by publishing an image that prominently displays the famous

trademark to criticize the conduct of its owners.  I hold that the competitor is not violating the

law, and I dismiss the complaint so claiming.

## I.     Background

### a.  The Complaint

Plaintiff Ebony Media Operations, LLC alleges that The Root, a digital magazine

and online platform (www.theroot.com) operated by Defendants Fusion Media Group, LLC

("FMG"), its parent company, Univision Communications Inc. ("Univision"), and Gizmodo

Media Group, LLC,[1] made unauthorized use of Plaintiff's distinctive EBONY logo—a logo that

has long appeared on the covers of Plaintiff's EBONY Magazine.  The following facts are taken

---

[1] Gizmodo Media Group, LLC is an online media company operated by FMG and Univision.

from Plaintiff's Complaint, which I must "accept[] as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

EBONY Magazine is a monthly magazine that "provide[s] cultural insights, news, and African-American perspectives for an African-American audience." Compl., ECF No. 1, at ¶ 13. The EBONY Logo Mark, registered under U.S. Trademark Registration No. 3,180,225, appears in the upper-left corner of the cover of each issue and consists of the word EBONY in bold white font against a red rectangular background. *See* Compl. Ex. B, ECF No. 1-2. Plaintiff alleges that it owns the rights to the EBONY Logo Mark, along with the related EBONY Word Mark (together, the "EBONY Marks").[2] Compl. ¶¶ 10, 12. It further alleges that the EBONY Marks are distinctive and famous. *Id.* at ¶ 15.

The Root directly competes with EBONY Magazine and ebony.com, *id.* at ¶ 16, including "in the promotion, sale, and distribution of substantially similar goods and services." *Id.* at ¶ 27. On or about November 28, 2018, The Root published an article written by one of its contributing writers, Lawrence Ross, entitled "Dear Ebony Magazine:  FU, Pay Your Writers!" *Id.* at ¶ 21. The article criticizes EBONY Magazine for its alleged failure to pay contributing writers in a timely fashion. *Id.* The article also contains an image of a mock EBONY Magazine cover (the "Accused Image"), featuring the EBONY Logo Mark, a photograph of EBONY Magazine owners Michael Gibson and Willard Jackson, and several mock headlines:

- "Special Deadbeat Edition:  #EbonyStillOwes"
- "Cheat your black writers by not paying?  Ebony owners Michael Gibson & Willard Jackson show us how!"
- "Ebony 100 Gala: Let Them Eat Cake!  101 Ways Ebony Doesn't Pay Writers . . .  But Holds Gala Banquet w/ Chris Tucker"

---

[2] The EBONY Word Mark, registered under U.S. Trademark Registration No. 423,815, is depicted in black font, without the red rectangular background used by the EBONY Logo Mark.

2

- "New Ebony Owners:  Michael Gibson and Willard Jackson The Slow Play Kings of Black Biz"
- "December 2018:  Thousands in Back Pay"

*See* Compl. Ex. C, ECF No. 1-3.  The article encourages readers to put pressure on EBONY Magazine's sponsors by posting the Accused Image on social media.  Compl. ¶¶ 23-24.

   Plaintiff alleges that Defendants' use of the Accused Image deceived customers and advertisers, attracting them away from Plaintiff's products and online media platforms and toward Defendants'.  *Id.* at ¶¶ 28-30.  It claims trademark infringement, unfair competition, trademark dilution, and false advertising in violation of the Lanham Act, 15 U.S.C. §§ 1114 (infringement), 1125(a)(1)(A) (unfair competition), 1125(c) (dilution), 1125(a)(1)(B) (false advertising); and tortious interference, unfair and deceptive business practices, and unfair competition under New York law.  Defendants move to dismiss on the grounds that the Complaint fails to state a claim under Rule 12(b)(6), and that Plaintiff's state law claims are barred by the Texas Citizens Participation Act ("TCPA"), Tex. Civ. Pract. & Rem. Code § 27.001 *et seq.*

  **b.  Standard on a Motion to Dismiss**

   In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party.  *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

### c.  Relevant Statutes

The relevant trademark infringement provision of the Lanham Act provides:

> Any person who . . . use[s] in commerce any reproduction,
> counterfeit, copy, or colorable imitation of a registered mark in
> connection with the sale, offering for sale, distribution, or
> advertising of any goods or services on or in connection with
> which such use is likely to cause confusion, or to cause mistake, or
> to deceive, . . . shall be liable in a civil action . . . .

15 U.S.C. § 1114(1)(a).  The unfair competition provision of the Lanham Act similarly provides,

in relevant part:

> Any person who, on or in connection with any goods or
> services, . . . uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false designation of
> origin, false or misleading description of fact, or false or
> misleading representation of fact, which . . . is likely to cause
> confusion, or to cause mistake, or to deceive as to the affiliation,
> connection, or  association of such person with another person, or
> as to the origin, sponsorship, or approval of his or her goods,
> services, or commercial activities by another person, . . . shall be
> liable in a civil action . . . .

15 U.S.C. § 1125(a)(1)(A).  The dilution provision of the Lanham Act provides:

> Subject to the principles of equity, the owner of a famous mark
> that is distinctive, . . . shall be entitled to an injunction against
> another person who . . . commences use of a mark or trade name in
> commerce that is likely to cause dilution by blurring or dilution by
> tarnishment of the famous mark, regardless of the presence or
> absence of actual or likely confusion, of competition, or of actual
> economic injury.

15 U.S.C. § 1125(c)(1).  The false advertising provision of the Lanham Act

provides, in relevant part:

> Any person who, on or in connection with any goods or
> services, . . . uses in commerce any word, term, name, symbol, or
> device, or any combination thereof, or any false designation of
> origin, false or misleading description of fact, or false or
> misleading representation of fact, which . . . in commercial
> advertising or promotion, misrepresents the nature, characteristics,
> qualities, or geographic origin of his or her or another person's

goods, services, or commercial activities, . . . shall be liable in a
civil action . . . .

15 U.S.C. § 1125(a)(1)(B).

## II.   Discussion

The Lanham Act must be construed narrowly to avoid conflict with First

Amendment values. *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2d Cir. 1989).  "At the same time,

'[t]rademark protection is not lost simply because the allegedly infringing use is in connection

with a work of artistic expression.'"  *Cliffs Notes, Inc. v. Bantam Doubleday Dell Pub. Grp.,*

*Inc.*, 886 F.2d 490, 493 (2d Cir. 1989) (quoting *Silverman v. CBS Inc.*, 870 F.2d 40, 49 (2d Cir.),

*cert. denied*, 492 U.S. 907, 109 S. Ct. 3219 (1989)).

As the Supreme Court has observed in the copyright context, parody, "[l]ike less

ostensibly humorous forms of criticism, . . . can provide social benefit, by shedding light on an

earlier work, and, in the process, creating a new one."  *Campbell v. Acuff-Rose Music, Inc.*, 510

U.S. 569, 579, 114 S. Ct. 1164 (1994).  Accordingly, the First Amendment provides parody a

"broad scope" of protection.  *Cliffs Notes*, 886 F.2d at 493 (quoting *Groucho Marx Prod., Inc. v.*

*Day and Night Co.*, 689 F.2d 317, 319 n.2 (2d Cir. 1982)); *see also Berlin v. E.C. Publications,*

*Inc.*, 329 F.2d 541, 545 (2d Cir.) ("[P]arody and satire are deserving of substantial freedom—

both as entertainment and as a form of social and literary criticism.") (emphasis removed), *cert.*

*denied*, 379 U.S. 822, 85 S. Ct. 46 (1964).

The Accused Image uses parody to enhance Ross's article, the primary purpose of

which is to criticize EBONY Magazine.  That central fact is fatal to each of Plaintiff's Lanham

Act claims—trademark infringement, unfair competition, dilution, and false advertising.  That

Defendants compete with Plaintiff, and allegedly published the article, in part, to harm Plaintiff's

5

business, is insufficient to overcome the protection to which Defendants' parodic and critical expressions are entitled.

### a. Trademark Infringement and Unfair Competition

"The infringement analysis under the trademark infringement and unfair competition provisions of the Lanham Act is the same." *Phoenix Entm't Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 546 (S.D.N.Y. 2018) (citing *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009)). "To prevail on claims under either provision, 'a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the mark of the plaintiff,' meaning that use of the mark 'creates a likelihood of confusion.'" *Id.* (quoting *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508-09 (2d Cir. 1997)).

Where, as here, "an expressive work is alleged to infringe a trademark, it is appropriate to weigh the public interest in free expression against the public interest in avoiding consumer confusion." *Cliffs Notes*, 886 F.2d at 494. The Second Circuit's eight-factor test for determining the likelihood of confusion, known as the *Polaroid* test,[3] "has its origin in cases of purely commercial exploitation, which do not raise First Amendment concerns." *Cliffs Notes*, 886 F.2d at 495 n.3. The *Polaroid* test therefore "is at best awkward in the context of parody, which must evoke the original and constitutes artistic expression." *Id.* In striking the balance between allowing free expression and avoiding consumer confusion, "somewhat more risk of confusion is to be tolerated when a trademark holder seeks to enjoin artistic expression such as a parody." *Id.* at 495.

---

[3] *See Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).

The eight *Polaroid* factors are:

> (i) the strength of plaintiff's mark; (ii) the similarity of the parties' marks; (iii) the proximity of the parties' products in the marketplace; (iv) the likelihood that the plaintiff will "bridge the gap" between the products; (v) actual consumer confusion between the two marks; (vi) the defendant's intent in adopting its mark; (vii) the quality of the defendant's product; and (viii) the sophistication of the relevant consumer group.

*Playtex Prods., Inc. v. Georgia-Pac. Corp.*, 390 F.3d 158, 162 (2d Cir. 2004) (citing *Polaroid Corp.*, 287 F.2d at 495. "[A]pplication of the *Polaroid* test is 'not mechanical, but rather, focuses on the ultimate question of whether, looking at the products in their totality, consumers are likely to be confused.'" *Fischer v. Forrest*, 286 F. Supp. 3d 590, 612 (S.D.N.Y. 2018) (quoting *Kelly–Brown v. Winfrey*, 717 F.3d 295, 307 (2d Cir. 2013)).

Defendants argue that their use of the EBONY Marks in the Accused Image constitutes "nominative fair use." "The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016) (quoting *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102 (2d Cir. 2010)). Nominative fair use cases require consideration of three factors in addition to the *Polaroid* factors:

> (1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate

7

relationship between plaintiff's and defendant's products or
services.

*Id.* at 168.  However, parody is ill-suited to analysis under the three nominative fair use factors

because the use rarely will be:  (1) necessary to describe plaintiff's product or service, since

parody involves distortion and alteration rather than description; (2) limited to what is necessary

for identification, since the purpose of parody is to evoke and *mimic* the original; or (3) true and

accurate, in a literal sense, about the relationship between the products, since parody often

contains strong elements of sarcasm and irony.

   The Complaint, considered together with its accompanying exhibits, does not

plausibly allege that Defendants' use of the EBONY Marks creates a risk of confusion that

would outweigh the public interest in free expression.  As discussed above, the public interest in

free expression of parodic criticism is substantial, and the risk of confusion created by the

Accused Image, assessed using the *Polaroid* test, is minimal.

   As to the first factor, the Court accepts that the EBONY Marks are strong marks.

"In the usual trademark case, a strong mark is a factor pointing toward a likelihood of confusion.

However, where the plaintiff's mark is being used as part of a jest . . . the opposite can be true.

The strength and recognizability of the mark may make it easier for the audience to realize that

the use is a parody and a joke on the qualities embodied in trademarked word or image." *Louis*

*Vuitton Malletier, S.A. v. My Other Bag, Inc.*, 156 F. Supp. 3d 425, 441 (S.D.N.Y.) (quoting

*Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC*, 221 F. Supp. 2d 410, 415 (S.D.N.Y.

2002)), *aff'd*, 674 F. App'x 16 (2d Cir. 2016).  Accordingly, the first factor does not weigh in

favor of either side.

   The second factor weighs strongly in favor of Defendants.  Although Defendants

reproduced the EBONY Logo Mark itself without significant alteration, the context in which

they presented it immediately removed any semblance of true similarity. Each of the five headlines on the Accused Image is harshly and unambiguously critical of EBONY Magazine—sarcastically purporting to preview (non-existent) stories about: the magazine being a "deadbeat," the magazine's owners "show[ing] us how" to cheat black writers, "100 Ways Ebony Doesn't Pay Writers," the magazine's owners as "Slow Pay Kings of Black Biz," and "Thousands in Back Pay" owed by the magazine. It is difficult to imagine any reader experiencing confusion as to whether or not EBONY Magazine sponsored or endorsed a cover that portrays it in such a negative light.

The third, fourth, fifth, and sixth factors also weigh in favor of Defendants. With respect to proximity, although the two publications generally compete for readership, neither the online article containing the Accused Image nor the social media posts through which the image allegedly was distributed compete directly with, or are in any other sense "proximate" to Plaintiff's products. Likewise, the Complaint does not plead any facts plausibly suggesting that Plaintiff was or is likely to "bridge the gap" by, for example, providing competing coverage of its alleged underpayment of its contributing writers. As for actual confusion, for the reasons discussed above, the Complaint pleads no facts to suggest that discovery would yield evidence of actual confusion. Finally, although the Complaint pleads bad faith with respect to the accuracy of Defendants' reporting, it does not plead bad faith with respect to the issue of confusion. In other words, there is no suggestion that Defendants intended to mislead consumers as to the source or sponsor of the Accused Image.

The final two factors, the quality of Defendants' product and the sophistication of consumers, are neutral.

In sum, the substantial public interest in free expression far outweighs any risk of confusion created by the Accused Image. Plaintiff's trademark infringement and unfair competition claims under the Lanham Act therefore are dismissed.

### b. Dilution

Plaintiff alleges that Defendants diluted its brand by tarnishing it,[4] in violation of 15 U.S.C. § 1125(c). Under 15 U.S.C. § 1125(c)(3)(B), however, "[a]ll forms of news reporting and news commentary" are not actionable as dilution by blurring or dilution by tarnishment. Likewise, under 15 U.S.C. § 1125(c)(3)(A)(ii), fair use of a mark in connection with "identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner" is not actionable as dilution. The Accused Image easily satisfies both exclusion provisions, and Plaintiff's dilution claim under the Lanham Act therefore is dismissed.

### c. False Advertising

"[T]o constitute 'commercial advertising or promotion' under the Lanham Act, a statement must be: (1) 'commercial speech,' (2) made 'for the purpose of influencing consumers to buy defendant's goods or services,' and (3) '. . . disseminated sufficiently to the relevant purchasing public.'" *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004) (quoting *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 56, 57-58 (2d Cir. 2002)).

In *Boule v. Hutton*, the Second Circuit held, with "little hesitation," that statements made to an art magazine by art gallerists, disparaging the authenticity of works offered for sale by competitor art collectors, were not commercial speech. 328 F.3d 84, 91

---

[4] Plaintiff's Opposition Brief also discusses dilution by blurring. *See* ECF No. 31, at 22. Because the exclusions discussed below apply to both dilution theories, Plaintiff's dilution claim fails under either theory.

(2003). The Court reasoned that the statements "contribute[d] to reporters' discussion of an issue of public importance," *i.e.*, fraud in the art market, and "occur[red] in a forum that has traditionally been granted full protection under the First Amendment." *Id.*; *see also Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1541 (S.D.N.Y. 1994) (holding that defendants' publication of allegedly false surveys favorably comparing their non-profit scientific journals with competitor plaintiffs' commercial scientific journals was not actionable commercial speech under the Lanham Act, despite the fact that defendants may have intended to benefit from publishing the comparison); *Croton Watch Co. v. Nat'l Jeweler Magazine, Inc.*, No. 06 Civ. 662 (GBD), 2006 WL 2254818, at *10 (S.D.N.Y. Aug. 7, 2006) ("The non-commercial nature of a journalist's article cannot be overcome by plaintiff claiming an improper purpose motivated the publisher to run the article.").

The Accused Image is not commercial speech. As discussed above, it is a parody, made by a professional writer for inclusion in his article in Defendants' online magazine; it does not mention any of Defendant's goods or services, much less promote them; it pertains to an issue of public importance, *i.e.*, a leading magazine's treatment of its contributing writers; and, although it may implicitly invite comparison between how Plaintiff and Defendants treat their writers, the central message of the Accused Image, and the article in which it appears, is simply that Plaintiff should pay its writers in a timely fashion.

### d.   State Law Claims

Plaintiff's state law claims are dismissed for the same reasons. *See Kregos v. Associated Press*, 795 F. Supp. 1325, 1336 (S.D.N.Y. 1992) ("[T]he standards for [15 U.S.C. § 1125(a)] claims under the Lanham Act and unfair competition claims under New York law are virtually the same."); *Charles Atlas, Ltd. v. DC Comics, Inc.*, 112 F. Supp. 2d 330, 341

(S.D.N.Y. 2000) (finding risk of confusion "clearly outweighed by the public interest in parodic expression" and dismissing state law trademark dilution and unfair competition claims "because they are based on the same permissible conduct"); *Yankee Pub. Inc. v. News Am. Pub. Inc.*, 809 F. Supp. 267, 282 (S.D.N.Y. 1992) (finding that the "same First Amendment considerations that limit a cause of action under the Lanham Act apply also to a cause of action under New York law"). Accordingly, I do not consider Defendants' arguments that the state law claims are barred by the TCPA.

III.    **Conclusion**

For the reasons discussed above, Defendants' motion to dismiss is granted. The oral argument scheduled for June 12, 2019 is canceled. The Clerk shall terminate the open motions (ECF Nos. 20, 21), enter judgment for Defendants, and mark the case closed.

SO ORDERED.

Dated:      New York, New York
            June 3, 2019

                                        ALVIN K. HELLERSTEIN
                                        United States District Judge

12